UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21409-Civ-GOLD
MAGISTRATE JUDGE P. A. WHITE

MONTREAL A. BROWN,                      :

          Petitioner,                   :

v.                                      :          <u>REPORT OF</u>
                                                   <u>MAGISTRATE JUDGE</u>
WALTER A. McNEIL,[1]                    :

          Respondent.                   :
_____

<u>Introduction</u>

Montreal A. Brown has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions for armed carjacking with a firearm, and armed robbery with a firearm entered following a jury verdict in Dade County, Circuit Court, case no. 01-31447-A.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of this amended petition with supporting memorandum and exhibits (DE#9), the Court has the response and supplemental responses of the state to an order to show cause with multiple exhibits (DE#s10,12,14), and the petitioner's reply (DE#23).

---

[1] Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

The petitioner raises the following claims:[2]

1-2.   His constitutional rights were violated when the trial court denied his motion for new trial based on the state's failure to disclose <u>Brady</u>[3] evidence concerning pending criminal charges of two of its key witnesses, Ishmael Jones and Gina Josephat; and, the failure to exonerate the petitioner of the carjacking offense based on the victim's testimony. (DE#9:13).

3.     His constitutional rights were violated when the prosecutor engaged in prosecutorial misconduct during opening statements and closing argument. (DE#9:25).

4.     He was denied effective assistance of counsel for numerous specified reasons. (DE#9:28).

5.     He was denied effective assistance of counsel, where his lawyer failed to impeach the petitioner's codefendant and key prosecution witness with statements made to Detective Dixon. (DE#9:31).

6.     He was denied effective assistance of counsel, where his lawyer coerced and/or otherwise refused to call alibi witness, Natasha Higgs, to testify at trial; and, coerced the petitioner against testifying at trial. (DE#9:33).

7-8.   He was denied effective assistance of counsel, where his lawyer failed to call Rolando Largaespada and Officer Robles to testify at trial. (DE#1:32-36).

9-10.  His sentences were vindictive because the petitioner refused to accept the state's plea offer, in violation of his constitutional rights. (DE#9:38).

---

[2]For purposes of clarity, the claims are numbered as they appear in the petitioner's amended petition. It should be noted, however, that consolidated claims 7-8 appear to have been inadvertently omitted from the amended petition. Those consolidated claims are located in petitioner's initial memorandum (DE#1:32-37).

[3]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

## Procedural History

The procedural history of the underlying state court convictions reveals as follows. The petitioner and his codefendant, Ishmael Jones, were charged by Information with armed carjacking with a firearm and armed robbery with a firearm of Todd Calderin. (DE#14:Ex.A:A). The petitioner proceeded to trial, but his codefendant Jones, pleaded guilty to a reduced charge of grant theft, and testified against the petitioner. The petitioner was found guilty as charged followed a jury verdict. (DE#14:Ex.A:C; T.[4]644). On March 14, 2003, the petitioner was adjudicated guilty and sentenced as a prison releasee reoffender to two concurrent terms of life in prison. (DE#14:Ex.A:D-E). The petitioner appealed, raising essentially the same claim as claim 1 of this federal petition, as listed above, (DE#14:Ex.A:G). On August 11, 2004, the appellate court *per curiam* affirmed the convictions and sentences without written opinion. <u>Brown v. State</u>, 882 So.2d 389 (Fla. 3 DCA 2004); (DE#14:Ex.A:H). Thus, the judgment of conviction became final, for purposes of the federal AEDPA's one year statute of limitations, at the latest on November 11, 2004, ninety days following the affirmance of the convictions and sentences on direct appeal.[5]

---

[4]The letter "T" in this Report followed by a page number refers to the trial transcripts in the state forum which have been provided by the respondent in this collateral proceeding and are part of the appendix which is docketed at DE#14.

[5]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>Bond v. Moore</u>, 309 F.3d 770 (11 Cir. 2002); <u>Coates v. Byrd</u>, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13.

Over month of untolled time elapsed thereafter, until December 20, 2004, when the petitioner returned to the state court filing his first motion for postconviction relief pursuant to Fla.R.Cr.P. 3.850, raising multiple claims, including claims 3, 4, 5, 6, 7-8 of this federal petition, as listed above. (DE#14:Ex.A:I). Following the state's response, on June 7, 2008, the trial court entered a 21-page, lengthy, detailed order denying the Rule 3.850 motion. (DE#14:Ex.A:L). That denial was subsequently *per curiam* affirmed without requiring a response from the state, Brown v. State, 912 So.2d 1234 (Fla. 3 DCA 2003)(table), with the mandate issuing on November 2, 2005. (DE#14:Ex.A:M).

While the above appeal was still pending, the petitioner next filed a motion to correct illegal sentencing pursuant to Fla.R.Cr.P. 3.800(a), raising the same claim as claims 9-10 of this federal petition. (DE#14:Ex.A:N). The trial court denied the motion without prejudice to the petitioner to refile the motion with proper transcripts supporting his allegations. (DE#14:Ex.A:O). Rather than refile the motion, the petitioner appealed the court's order, which was subsequently *per curiam* affirmed without written opinion. Brown v. State, 915 So.2d 232 (Fla. 3 DCA 2005); (DE#14:Ex.A:P). Rehearing was denied and the mandate issued on December 30, 2005. (DE#14:Ex.A:P).

While that appeal was pending, the petitioner filed a state habeas corpus petition raising multiple claims of ineffective assistance of appellate counsel. That petition was ultimately denied, and the mandate issued on November 27, 2007. Brown v. State, 967 So.2d 257 (Fla. 3 DCA 2007). Discretionary review was denied on April 28, 2008. Brown v. State, 982 So.2d 1178 (Fla. 2008).

Less than one month of untolled time elapsed thereafter until

4

May 5, 2008, when the petitioner came to this court filing his initial federal habeas corpus petition.[6] (DE#1:61). On June 12, 2008, the petitioner filed a timely amended petition, raising the same claims as those raised in the initial petition. (DE#9). Both petitions were filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). The respondent concedes correctly that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v. Reese, 541 U.S. 27 (2004); Gray v. Netherlands, 518 U.S. 152, 163 (1996); Duncan v. Henry, 513 U.S. 364, 365-366 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his]

---

[6]See: Adams v. United States, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971).

Exhaustion requires that a claim be pursued in the state courts through the appellate process. <u>Leonard v. Wainwright</u>, 601 F.2d 807 (5 Cir. 1979). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. <u>See Caraballo v. State</u>, 805 So.2d 882 (Fla. 2 DCA 2001). A claim of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court of appeal.  <u>State v. Dist. Ct. of Appeal, First Dist.</u>, 569 So. 2d. 439, 442 n.1 (Fla. 1990). These principles will be discussed when relevant in connection with the petitioner's individual claims *infra*.

<u>Facts Adduced At Trial</u>

For an appreciation of the issues involved in this proceeding, a full review of the facts adduced at trial is essential. Gina Josephat testified that on October 4, 2001, she was dating her boyfriend, the petitioner's codefendant, Ishmael Jones, known as "J-Five." (T.260). Josephat identified the petitioner in court as Jones' friend. (T.260-61). According to Josephat, she knew the petitioner prior to 2001, as he confronted some boys that were following her. (T.261-62).

According to Josephat, Jones was a "watch-out for guys that sell drugs." (T.262). At 4:00 a.m. on October 4th, she went to pickup Jones at his place of business when she saw the petitioner hanging around. (T.262-264). Josephat recalled that the petitioner was wearing a black skully and was dressed all in black. (T.264).

While she was waiting, Josephat observed a light colored Cadillac pull into the driveway, at which time one of the occupants of the vehicle exited the vehicle and walked with the petitioner towards an alley. (T.264-66). As they were coming back from the alley, Josephat noticed that the petitioner had a gun which he pointed towards the driver of the Cadillac. (T.266-67). At that time, Jones, who was unarmed, approached the petitioner. (T.267). The petitioner then directed that the occupants of the Cadillac exit the car, after which the petitioner jumped behind the wheel of the car, accompanied by Jones, and drove the vehicle several blocks until the car stopped. (T.269-70).

When the car would not restart, Josephat pushed the car with her car, and later asked another individual, Cheesy Bradley, to help push the car. (T.271-72). When the Cadillac had been pushed to its resting place, the petitioner, Jones, and Bradley tried unsuccessfully to remove the tires and rims off the car. (T.273). Later, Josephat drove away with Jones. (T.273-74). Several days later, however, Jones showed up at Josephat's house with two stolen rims from the Cadillac which she stored for about a week. (T.274). The rims, however, were seized after a detective showed up at her house and questioned her about the items. (T.274). On October 31, 2001, Josephat provided Detective Dion with a statement consistent with her trial testimony. (T.275).

Codefendant Ishmael Jones, a convicted felon, testified that

7

he was working as a look-out on October 4, 2001, watching out for any signs of police activity for a drug dealer. (T.387). Jones testified he's known the petitioner since elementary school, and that the petitioner was at the same location on the date of the incident. (T.389). According to Jones, a Cadillac drove up, and its occupants wanted to know where drugs were being sold. (T.388-390). The petitioner then accompanied one of the occupants to the back alley, but when Jones next saw the petitioner, he was pointing a gun at one of the individuals. (T.391). The occupants of the Cadillac then ran away. (T.391-92). The petitioner asked Jones if he wanted any rims from the car, and Jones responded in the affirmative, at which time he got in the car as the petitioner drove it away. (T.392-93). Cheesy Bradley also accompanied them on the ride. (T.393). All three tried to restart the Cadillac but when it refused to start, the car was pushed to the petitioner's cousin's house. (T.394). Jones then took two rims from the car and stored them at his girlfriend's house. (T.394-95).

Within a few weeks of the incident, Jones gave police a statement, and entered into an agreement with the state to testify truthfully. (T.395-96). In exchange, the state agreed to recommend that Jones receive a sentence of less than five years for his participation in the offense.(T.396). Jones admitted that he was a convicted felony, and currently had a pending case as a habitual traffic offender, but denied that the plea agreement as to the case under attack here had any bearing on the traffic offense. (T.396, 399-403). Jones further testified that he was on probation at the time he committed the instant offense, but the terms of his plea agreement apparently encompassed all cases. (T.397).

Miami-Dade Crime Scene Investigator, Jose Quinones, testified that he lifted latent prints from the Cadillac after it was

recovered, but none of the prints matched the petitioner, Jones, or the victim. (T.436-53).

The victim, Todd Calderin, testified that on the date of the incident, he went to a small party at a friend's house. (T.456). He left the party with his friend, Rolando Largaespada, to buy some "weed." (T.456-57). According to Calderin, he pulled up to the location where Jones was standing, intending to purchase $5.00 worth of marijuana and then go with Rolando to meet some girls. (T.458).

At the time, Calderin was driving a 1991 Cadillac he purchased for $5,000.00, and then put gold rims at a cost of $5,800.00, a $600.00 to $700.00 stereo system, a $700.00 steering wheel, a $500.00 grill, and an alarm system that would shut the car off after a period of time if someone got inside the vehicle without putting in a special code. (T.461-62).

According to Calderin, his friend Rolando got out of the car to buy the drugs, while he waited in the car. (T.463). Thereafter, a man motioned that Calderin should park, while another individual escorted Rolando to buy the drugs. (T.465). A short while later, the individual that accompanied Rolando pointed a gun at Calderin, instructing him to get out of the car, and to turn over whatever was in his pockets, including Calderin's cellular phone. (T.465-67).

Calderin, scared for his life, observed another individual approach the car, but when he was able to, he took off running until he was able to get a police officer. (T.469-71). Calderin indicated that several minutes later Detective Dixon arrived at the scene, but Calderin gave him a false name because he had an outstanding bench warrant for driving without a license, and did not want to get arrested. (T.473-74). Calderin was able to identify the petitioner

and Jones from photo arrays. (T.477-80).

Miami-Dade Police Detective James Dixon testified that on October 4, 2001, in the early morning hours, he was assigned an armed carjacking investigation. (T.308). He arrived at the scene, at which time he encountered two boys, Todd Calderin and Rolando Largaespada, who appeared frightened and shaken up, and who also gave the detective a false name. (T.311). According to Detective Dixon, Calderin lied about his identity because he currently had an outstanding traffic bench warrant, and was also on his way to purchase marijuana when the crime occurred. (T.353-357). At that time, the detective canvassed the area, but found no witnesses. (T.313-14). Eventually, he put together a photo array, which included a picture of the petitioner. (T.314-19). On October 12, 2001, Calderin was shown the photo array and he immediately identified the petitioner as one of the perpetrators. (T.318-19). Calderin also identified Jones from another photo array. (T.325-27).

On October 13, 2001, the petitioner was advised of his constitutional rights and then interviewed by Detective Dixon. (T.321-325). At that time, the petitioner gave two separate home addresses, both of which were in the general vicinity of the crime scene. (T.325). A few weeks later, Jones was arrested, and after being advised of and waiving his rights, he gave a statement. (T.327-330). The detective identified the two tire rims he seized from Josephat's possession which were stolen from the victim's Cadillac. (T.331-32). It appears that a social security number was on the rims which aided in the identification. (T.333). Dixon opted not to charge Josephat because she was more valuable as a witness. (T.334-35).

<u>Discussion of the Claims</u>

10

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-mined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (1999), the Supreme Court interpreted this provision as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

As indicated in §2254(d), there are two distinct avenues for granting federal habeas relief. <u>See</u> <u>Hall v. Head</u>, 310 F.3d 683, 690 (11 Cir. 2002), <u>citing</u>, <u>Williams</u>, 529 U.S. at 404. First, relief may be available if the state court decision is "contrary to" clearly established United States Supreme Court precedent. For example, "if the state court arrives at a conclusion opposite to that reached by

11

[the Supreme] Court on a question of law," the decision is contrary to Supreme Court precedent. Id., quoting, Williams, 529 U.S. at 405. Alternatively, "if the state court confronts a set of facts that are materially indistinguishable from a [relevant Supreme Court decision and] arrives at a result different" from that decision, such a result is also contrary to Supreme Court precedent. Id., quoting, Williams, 529 U.S. at 406.

Second, a petition for habeas relief may be granted if the state court decision involved an "unreasonable application" of Supreme Court precedent. Id. at 691. "A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" satisfies the "unreasonable application" clause of § 2254(d)(1). Id., quoting, Williams, 529 U.S. at 407-08. The proper inquiry is whether the state court applied federal law in an "objectively unreasonable" manner. Williams, at 409. Finally, §2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. Hall, 310 F.3d at 683. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Id. In the habeas context, clearly established federal law "refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Id., citing, Williams, 529 U.S. at 412. Further, §2254(e)(1) provides for a highly deferential standard of review for factual determinations made by a state court in that a state court's factual findings are presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, ___ U.S. ___, (2002).

The Eleventh Circuit has stressed the importance of this new standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's

application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002).

In **consolidated claim 1-2,** the petitioner asserts that his constitutional rights were violated when the trial court denied his motion for new trial based on the state's failure to disclose <u>Brady</u> evidence concerning pending criminal charges of two of its key witnesses, Ishmael Jones and Gina Josephat; and, failed to exonerate the petitioner of the carjacking offense based on the victim's testimony. (DE#9:13). According to the petitioner, the prosecution failed to disclose that Jones had a pending kidnapping and battery charge in a domestic case involving his girlfriend Josephat. (R.105-110). It appears that these pending charges arose when Josephat gave the prosecution a prefile statement several weeks prior to the petitioner's trial. (DE#9:19). The petitioner concludes that this information demonstrates that Jones had reason to "curry favor" with the prosecution, and Josephat lied when she testified that she had "a close relationship" with Jones, the father of her baby. (<u>Id</u>.). He further claims that the jury was entitled to know that Josephat's motive for testifying was not only to "curry favor" with the prosecution to avoid charges for her involvement in the case, but also to insure that charges were filed against Jones in the domestic violence matter. (<u>Id</u>.).

Review of the record reveals that when the issue was argued before the trial court, the court noted correctly that even absent

this information, there was a third witness, the victim himself, who positively identified the petitioner. (R.110-115). The trial court concluded that even if Jones and Josephat lied regarding their prior criminal history and pending charges, such error was, at best, harmless. (R.116). The court noted that "Jones already had the maximum motive to cooperate slash [sic] lie, to avoid a life sentence, what I characterize as death by incarceration. And just because he's facing another case is really going to have no more impact on this jury." (R.117). The trial court denied the motion for new trial finding there was no "reasonable probability that the result of the trial would have been different" if the information regarding the two witnesses had been disclosed to the defense. (R.117,125).

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a Brady violation must demonstrate: (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. LeCroy v. Fla. Dept. of Corrections, 421 F.3d 1237, 1268 (11 Cir. 2005); United States v. Meros, 866 F.2d 1304, 1308 (11 Cir. 1989). See also Strickler v. Greene, 527 U.S. 263, 281-82 (1999); United States v. Severdija, 790 F.2d 1556, 1558 (11 Cir. 1986). Moreover, this duty covers not only exculpatory material, but also information that could be used to impeach a key prosecution witness. Giglio v. United States, 405 U.S. 150, 154 (1972). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Stewart, 820 F.2d 370, 374 (11 Cir. 1987), quoting, United

States v. Bagley, 473 U.S. 667, 682 (1985). A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. United States v. Alzate, 47 F.3d 1103, 1109-1110 (11th Cir. 1995), quoting, United States v. Bagley, 473 U.S. 667, 682 (1985).

First, the petitioner has come forward with nothing to show that the state knowingly withheld this information. Such a conclusory and speculative contention falls far short of establishing that a Brady violation occurred. A court cannot speculate as to what evidence the defense might have found if the information had been disclosed. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). Since the petitioner here essentially has done no more than speculate that the disclosure of this information might have assisted his defense in some unspecified way, his claim of a Brady violation fails.

Likewise, the petitioner has failed to establish in this federal proceeding, as well as in the state forum, that the result of the trial would have been different if the allegedly suppressed information had been disclosed to the defense." Strickler v. Green, 540 U.S. 263, 287 (1999). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419 (1995). See also Strickler, 540 U.S. at 287 ("[T]he question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.") (quotation omitted). No such showing has been made here. Regardless, as previously narrated in this Report, the outcome of the trial would not have been affected had this information been brought before the jury.

In this case, given the facts adduced above regarding the offenses of conviction, including the victim's identification of the petitioner as the holder of the gun, no showing has been made that had the information regarding the pending criminal charges against Jones which were filed by Josephat been disclosed, and thus used for impeachment, the outcome of the guilt phase portion of the trial would have been different. Nothing of record in the state forum or this federal proceeding establishes a <u>Brady</u> violation. Thus, he is entitled to no relief on this claim.

If the petitioner is somehow raising a related due process claim that his conviction was based upon false or perjured testimony, any such claim must also fail. A defendant is denied due process when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959). There is no evidence whatever of perjured testimony and/or false evidence and/or prosecutorial misconduct. The fact that the petitioner takes issue with the testimony of certain state witnesses does not mean that such testimony was untruthful or a product of misconduct on the part of the state. Moreover, the witnesses were subject to cross-examination by defense counsel regarding their credibility and the reliability of their testimony and defense counsel in fact conducted thorough and forceful cross-examination of such witnesses. It is apparent that the jury rejected the defense presented and, instead, believed the state's theory and strong evidence presented by the state, as was its prerogative. Thus, the petitioner is not entitled to federal habeas corpus relief on any prosecutorial misconduct claim. Therefore, the state court's denial of this claim is in accord with federal constitutional principles and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim three,** the petitioner asserts that his constitutional rights were violated when the prosecutor engaged in prosecutorial misconduct during opening statements and closing argument. (DE#9:25). Specifically, the objected to testimony during opening statements and closing argument was the prosecutions continued statement that "[I]t takes a thief, to catch a thief and to prosecute a thief." (T.237,562). Likewise, the petitioner objects to the prosecution's argument during closing, as follows:

> And this case was investigated. You heard from him, yes, he's still here. So what? Does that make the case any weaker or any stronger? Does that make him any better or worse cop. So what? I'm still here. Mr. Smith is still here. And when we tried and he told you how much he tried interviews after interviews area canvass bringing people in, taking statements, going back out there interviewing people crime scene. Nothing came back. Is that the fault of the prosecution? Is that the fault of law enforcement or do we have weight or a lucky or a clever criminal?

(T.565).

It should first be noted that the claim could have been, but was not raised on direct appeal in the state forum. (DE#14:A:L). The respondent here asserts that this claim is procedurally barred, because the state courts in the postconviction proceedings applied a procedural bar.[7] The trial court in its order denying relief on this claim stated that the issue should have and could have been raised on direct appeal. <u>See</u> (Order Denying Rule 3.850-

---

[7]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

DE#14:Ex.A:A).

Alternatively, the court also found the claim meritless, stating in pertinent part that the prosecution's reference that "it takes a thief to catch a thief," "explained to the jury why they needed to make a deal with the co-defendant." (DE#14:Ex.A:L:6-7). The court concluded that the second comment, wherein the state asked a "rhetorical question during closing argument," like the first, were "isolated comments that did not undermine the verdict" in the case. (Id.). Moreover, the court noted that neither prong of Strickland had been established arising from counsel's failure to pursue this claim, and therefore the petitioner was entitled to no relief on the merits. (Id.). The trial court's denial of this claim was affirmed without written opinion. See Brown v. State, 912 So.2d 1234 (Fla. 3 DCA 2003)(table); (DE#14:Ex.A:M).

It is well established in Florida that claims that could have, and should have, been raised on direct appeal are procedurally barred from collateral review. The failure of a federal habeas petitioner to adhere to state procedural rules governing the proper presentation of claims will bar federal review of those claims in a subsequent federal habeas corpus proceeding. See Wainwright v. Sykes, 433 U.S. 72 (1977); Sims v. Singletary, 155 F.3d 1297, 1311 (11 Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. See Lindsey v. Smith, 820 F.2d 1137 (11 Cir. 1989). See also Agan v. Vaughn, 119 F.3d 1538, 1549 (11 Cir.1997)(holding that "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the court issues only a one-sentence

denial of relief. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman v. Thompson, 501 U.S. 722, 735-36, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11 Cir. 1995)(applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11 Cir. 1993)(applying bar where state court did not rule on claims presented).

"[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Kelley v. Secretary for Dept. of Corr., 377 F.3d 1317, 1351 (11 Cir. 2004)(internal quotation marks omitted). The federal court must apply a procedural bar to the claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, Harris v. Reed, 489 U.S. 255 (1989), or are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991).

Because the state court correctly applied procedural default principles of state law to arrive at the conclusion that the claim was barred, this court must respect the trial and appellate court decisions. In other words, the claim as listed above is now because it has been expressly barred in the state forum. This Court must thus now deem it procedurally barred as well, see Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999), unless either the cause and prejudice or the fundamental miscarriage of justice exception is established. O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999); see also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).

While the petitioner is not entitled to review on the merits of this claim, even if the claim were ripe for federal review, the petitioner cannot prevail on this claim.

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hall v. Wainwright, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. den'd, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reason-able probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. den'd, 485 U.S. 964 (1988).

The Eleventh Circuit has held in the context of federal criminal prosecutions that prosecutorial conduct requires a new trial only if the remarks 1) were improper and 2) prejudiced the defendant's substantive rights. United States v. Cannon, 41 F.3d 1462, 1466 (11 Cir. 1995); United States v. Cole, 755 F.2d 748, 767 (11 Cir. 1985). The remarks must be reviewed in context and the probable impact upon the jury must be assessed. United States v. Cannon, supra at 1469; United States v. Stefan, 784 F.2d 1093, 1100 (11 Cir. 1986).

The record, however, reveals that, contrary to the petitioner's allegation, when viewed insolation, even if the comments may have been inartful, and perhaps overreaching, it did not deny the petitioner due process. Thus, as correctly found by the trial court in the Rule 3.850 proceeding, the comment was proper and, even if

20

improper, it was not sufficiently prejudicial to warrant reversal of the proceedings, especially in light of the evidence implicating the petitioner in the offenses. See Greaves v. State, 821 So.2d 1079 (Fla. 4 DCA 2002).

The challenged remarks which may appear to be perhaps a bit strong, under the facts of this case, however, they were fair comment on the evidence to be presented or actually adduced at trial and did not render the trial fundamentally unfair. Moreover, even if the prosecutor's objectionable comments could possibly be viewed as having the potential to prejudice the jury, the comments did not impair the fundamental fairness of the petitioner's trial and did not contribute to the conviction, especially in light of the trial court's repeated instructions to the jury to rely on the evidence presented and not the comments of counsel when arriving at its verdict. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Since the prosecutor's comments did not fundamentally taint the trial and contribute to the convictions, the trial court's failure to grant a mistrial was not improper. See Ford v. State, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial).

Finally, given the strength of the evidence of the petitioner's guilt, it is apparent that the prosecutor's statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Accordingly, the rejection of the claim is not in conflict with

clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[8] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d).  <u>Williams v. Taylor</u>, <u>supra</u>.

In his next claims, **claims 4 through 8**, the petitioner raises a multitude of claims arising from counsel's effectiveness. In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish: (1) deficient performance – that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice – but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995).  Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1161 (11 Cir. 2003), <u>citing</u> <u>Chandler v. United States</u>,

---

[8]An appellate court's decision constitutes an "adjudication on the merits," and is thus entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA) for purposes of subsequent federal habeas corpus review, even when the state court does not issue an opinion providing any discussion with respect to the claim. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).

218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd, ___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).

In **claim four**, the petitioner asserts that he was denied effective assistance of counsel for numerous specified reasons. (DE#9:28). The gist of the petitioner's argument appears to be that counsel was ineffective in that he failed to conduct proper investigation and demonstrate at trial that Jones had additional motives for implicating the petitioner. (DE#9:28-29).

Specifically, the petitioner first claims counsel's erred in his decision to file a motion in limine to preclude information from being presented before the jury regarding the animosity between Jones and the petitioner. (DE#9:28). The petitioner claims this would have demonstrated that Jones had a significant motive for implicating the petitioner. (Id.). According to the petitioner,

Jones accused the petitioner of carjacking him at gunpoint in case no. 01-31488. (DE#9:28-29). Thus, the petitioner concludes that Jones lied when he stated that he had nothing against the petitioner, and in fact, was friends with the petitioner.

However, when the identical claim was raised in the petitioner's Rule 3.850 motion, the court denied the motion on the finding that it was sound trial strategy, and that counsel's decision to preclude the information from being brought to the jury's attention was not error. (DE#14:Ex.A:L:8-9). In so ruling, the court found in pertinent part as follows:

> ...he [counsel] was clearly concerned about the jury hearing that his client may have also been involved in another crime, which also involved a firearm, and the taking of a car by force. Most importantly, this would have also shown the jury that his client and the co-defendant knew one another, which would have bolstered the testimony of the co-defendant and the victim's identification of both robbers. After all, this evidence would have shown that the victim identified two men who knew each other, and not some random strangers without a mutual connection. Thus, counsel obviously weighed the probative value of this evidence against its prejudicial effect, and chose to keep the jury from hearing any evidence regarding another crime that his client was accused of perpetrating....
>
> However, even if the attorney's trial strategy is not evident from the record or the defendant's silence demonstrates his agreement and acquiescence with said strategy, this court further finds that this claim fails because it does not meet *Strickland's* prejudice prong.
>
> This was a case in which this court found that the co-defendant's avoidance of life in prison - what this court called 'death by incarceration' - gave him the 'maximum motive' to cooperate with the State and testify against the defendant. Therefore, consistent with this court's previously findings, defense counsel made such an 'overwhelming' presentation to the jury about the sanctions faced by the co-defendant, that any additional impeachment would have been cumulative and only a 'small addition' to the effective attack mounted against the co-defendant's credibility. Thus, any failure to use this *additional* impeachment evidence would not have undermined confidence in the verdict.
>
> Based on the foregoing, this claim is denied because it

> is refuted by the record as a joint trial strategy
> and/or because it fails to meet *Strickland's* prejudice
> prong.

(DE#14:Ex.A:L:9-10).

The trial court's denial was *per curiam* affirmed without opinion. <u>Brown v. State</u>, 912 So.2d 1234 (Fla. 3 DCA 2003)(table); (DE#14:Ex.A:M).

Independent review of the record in this collateral proceeding reveals that the trial court's finding in this regard was not error. It is evident that counsel vigorously attacked Jones' credibility, including the truthfulness of his testimony, inquiry into his prior convictions, his motive for testifying, and the benefits he expected to receive therefrom, including avoidance of life in prison. Under these circumstances, the state court's rejection of this claim was in accord with federal law and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In fact, it is evident that the petitioner received vigorous and able representation, more than adequate under the Sixth Amendment standard; therefore, counsel's performance was not ineffective. Given the evidence adduced at trial, however, no showing has been made that the outcome of the proceeding would have been different and the movant acquitted, but for counsel's failure to question or otherwise impeach Jones as suggested by the petitioner. Under these circumstances, the movant has failed to establish prejudice stemming from counsel's alleged deficient performance, pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and is therefore entitled to no relief on this claim.

The petitioner also claims counsel was ineffective for failing to call Detective Miller to testify regarding Jones' motive for testifying as a prosecution witness. (DE#9:28). According to the

petitioner, the detective was the lead investigator in charges where Jones was the victim of a carjacking by the petitioner. (<u>Id</u>.).

The petitioner has provided no affidavit in the state forum, nor in this habeas proceeding, to establish that the detective would have testified as proffered nor that he would have been available to testify at trial. Such a bare and conclusory allegation, bereft of record support, is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). To the contrary, it is not unreasonable for counsel to strategically determine not to call this witness. As previously discussed, calling the detective may have hurt, rather than assisted the defense. Finally, the petitioner's proffered testimony does not alter the outcome of the proceedings, given the evidence adduced at trial. <u>See</u> <u>Fugate v. Head</u>, 261 F.3d 1206, 1239, n.54 (11th Cir. 2001)(fact that other witnesses could have been called proves only that short-comings of trial counsel can be identified, while shortcomings can be identified, perfection is not the standard of effective assistance). The trial court in the state forum denied relief on this claim finding in pertinent part that the petitioner had failed to demonstrate deficiency or prejudice arising from counsel's strategic decision to not call this witness at trial. That decision was affirmed on appeal without opinion. <u>Brown v. State</u>, 912 So.2d 1234 (Fla. 3 DCA 2003); (DE#14:Ex.A:L).

Under the circumstances present here, no showing has been made in this federal proceeding that counsel was deficient or that the petitioner was prejudiced arising from counsel's failure to call the detective as a defense witness at trial. <u>See</u> <u>Strickland v. Washington</u>, <u>supra</u>. Under these circumstances, the rejection of the claim should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim five**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to impeach the petitioner's codefendant and Josephat, a key prosecution witness with statements made to Detective James Dixon, which petitioner claims were inconsistent with their respective trial testimonies. (DE#9:31).

In the Rule 3.850 proceeding where the identical claim was raised, the trial court found the claim "legally insufficient" and "conclusory" because the petitioner failed to cite to specific passages in Detective Dixon's report which would support the claim. (DE#14:Ex.A:L:9). Alternatively, the court denied relief finding that "even if said inconsistencies existed between the statements in the police reports and these witnesses' trial testimony, and the attorney committed error for not highlighting the inconsistencies, the defendant fails to prove how any lack of impeachment was prejudicial given the overwhelming impeachment found by this Court to exist in this case." (Id.:9-10).

Independent review of the record reveals that counsel cross-examined Jones regarding his prior felony convictions, his motive for testifying, the fact that he faced life in prison on the instant charges, and that he was on probation at the time he was interviewed by Detective Dixon. (T.399-413). Jones conceded that part of his negotiated agreement with the prosecution required him to testify for the state at the petitioner's trial. (Id.). As previously narrated in this Report, Jones, as well as, the victim directly identified the petitioner as the gunman. Even if counsel had attempted to impeach Jones with any inconsistent statements given to Detective Dixon regarding his relationship with the petitioner, no showing has been made in the state forum or this collateral

proceeding that this would have altered the outcome of the proceeding. In other words, even if it had been established that Jones and the petitioner were not friends, and that Jones had a reason to fabricate his testimony because of pending charges and his animosity towards the petitioner, there remained sufficient evidence upon which the jury could convict the petitioner.

Regarding counsel's failure to impeach Josephat with information regarding the battery charges she filed against Jones and her motive for testifying, the petitioner also cannot prevail on this claim. It is clear from the record that counsel effectively cross-examined Josephat. Even if the information suggested by the petitioner had been brought to the jury's attention, it is evident that the guilt phase portion of the trial would not have been affected.[9]

Consequently, no deficient performance or prejudice under Strickland has been established. Thus, the state court's rejection of this claim comports with applicable federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

In **claim six**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer coerced and/or otherwise refused to call alibi witness, Natasha Higgs, to testify at trial; and, coerced the petitioner against testifying at trial. (DE#9:33). According to the petitioner, Higgs was prepared to

---

[9]In fact, it should be noted that the court in rejecting the claim further found that it had compared the testimonies of these witnesses with the contents of Detective Dixon's report, and found that any impeachment based on inconsistencies between the two would have, at best, been cumulative, and therefore would not have undermined the outcome of the trial. (DE#14:Ex.A:L). The state court's finding in this regard is entitled to deference, and its rejection of the claim, finding no deficiency or prejudice under Strickland should not be disturbed here.

testify that the petitioner was in bed with her during the time the armed robbery and armed carjacking occurred. (Id.). As will be demonstrated *infra* both allegations are clearly refuted by the record.

Independent review of the record reveals that defense counsel filed a notice of alibi prior to trial. (DE#14:Ex.A:L:10). At the conclusion of the prosecution's case-in-chief, a lengthy colloquy was conducted on the record, and brief recesses taken, whereby counsel discussed both with the petitioner and his then girlfriend, Higgs, whether or not they would be testifying at trial. (T.510-17). When questioned by the court whether he was going to testify on his own behalf, the petitioner indicated he would not be testifying, stating under oath that there was "no need to." (T.510). Regarding Higgs' testimony, the court conducted a colloquy on the record of that witness, who vacillated between whether or not she desired to testify on the petitioner's behalf. (T.511,516-17). After a brief recess, defense counsel advised the court that she would not be testifying as a defense witness. (Id.). No objection thereto was raised by the petitioner. Moreover, there is nothing of record to suggest that counsel coerced or otherwise threatened the petitioner or Higgs from testifying at trial.

In rejecting the claim, the trial court found that defense counsel made a "strategic decision" not to call Higgs as a witness. (DE#14:Ex.A:L:12). "A likely reason for doing so may be discerned from Ms. Higgs' own ambivalence on the record about testifying, which could have been used to impeach her once she took the stand. After all, if she was as solid an alibi, both Ms. Higgs and the defendant would be jumping up and insisting she testify." (Id.). The court's conclusion in this regard was not error. No prejudice has been established arising from counsel's strategic decision not to

call Higgs to testify.

Likewise, no showing has been made that counsel coerced or precluded the petitioner from testifying. To the contrary, the petitioner knowingly and voluntarily waived the right. Under these circumstances, it is apparent that, as the state collateral court found, the petitioner waived his right to testify after a colloquy from the court. A criminal defendant has a fundamental constitutional right to testify in his or her own behalf. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997). The burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, and is therefore a component of effective assistance of counsel. Teague, 953 at 1533; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). Therefore, a claim that defendant's right to testify was violated by his trial counsel requires analysis under Strickland. Gallego v. United States,174 F.3d 1196 (11 Cir. 1999).

A "barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him." Underwood v. Clark, 939 F.2d 473 at 476 (7 Cir. 1991)(greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify is necessary to give the claim sufficient credibility to warrant a further investment of judicial resources); Siciliano v. Vose, 834 F.2d 29 (1 Cir.1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was insufficient to entitle him to hearing on issue of whether his right to testify was violated); Passos-Paternina v. United States, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

30

Most courts which have considered the question have followed the analysis set out by the Eleventh Circuit in Teague, and held that a criminal defendant's claim that trial counsel was constitutionally ineffective for failing to inform him of or allow him to exercise his right to testify must satisfy the two-prong test of Strickland, supra. Therefore, where a petitioner fails to demonstrate in his §2254 petition that he was prejudiced by counsel's alleged deficient representation, the inquiry is at an end. See, e.g., Brown v. Artuz, supra at 79; United States v. Tavares, 100 F.3d 995, 998 (D.C.Cir.1996)(no need for an evidentiary hearing because defendant's testimony would not have influenced the outcome of the trial). Where the record establishes no reasonable probability that the defendant's asserted testimony would have changed the outcome of the trial, the defendant has failed to make a prima facie showing of prejudice. Brown, supra; United States v. Tavares, supra.

The fact that the petitioner has grown to regret his decision not to testify in no way indicates that his lawyer rendered ineffective assistance with respect to his choice. Under such circumstances, the state court's denial of relief on the petitioner's claim is in accord with the settled federal principle that tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir. 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," Adams v. Wainwright, 709 F.2d 1443, 1445 (11 Cir.), cert. denied, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

A lawyer who advises a client not to testify for tactical reasons does not provide ineffective assistance. <u>Lee v. Murphy</u>, 41 F.3d 311, 316 (7 Cir. 1994). Here, where the petitioner admits that his lawyer advised him not to testify given his prior felony convictions, it is apparent that counsel's advice was tactical in nature, so the state court's finding that it did not comprise ineffective assistance comports with the foregoing controlling federal authorities. Thus, without competent evidence that the petitioner was subject to some sort of coercion or undue influence, it cannot be assumed in this federal proceeding that the petitioner's voluntary waiver and acceptance of counsel's trial strategy in which he did not testify was anything but voluntary.[10] <u>See</u> <u>Lambrix v. Singletary</u>, 72 F.3d 1500, 1508 (11 Cir. 1996)("Without evidence that [the defendant] was subject to continued coercion, we cannot assume that [the defendant's] apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary."), <u>aff'd</u>, 520 U.S. 518 (1997). Under the totality of the circumstances presented here, the state courts rejection of this claim is in accord with federal constitutional principles and therefore should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.


In **consolidated claim seven and eight**, the petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to call the second victim, Rolando Largaespada, and Officer Robles to testify at trial. (DE#1:32-36). According to the

---

[10]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his <u>pro se</u> petition to be of probative value. <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011-12 (5 Cir. 1983). <u>See also, e.g.</u>, <u>Panuccio v. Kelly</u>, 927 F.2d 106, 109 (2 Cir. 1991)(noting that a defendant's testimony after the fact suffers from obvious credibility problems). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. <u>See</u> <u>United States v. Ammirato</u>, 670 F.2d 552 (5 Cir. 1982); <u>United States v. Sanderson</u>, 595 F.2d 1021 (5 Cir. 1979); <u>King v. United States</u>, 565 F.2d 356 (5 Cir. 1978); <u>Clayton v. Estelle</u>, 541 F.2d 486 (5 Cir. 1976).

petitioner, Largaespada would have testified that he faced the armed robber for about ten to fifteen minutes while buying drugs, and actually returned to the car accompanied by the robber. (Id.). The petitioner claims that Largaespada gave the officer a physical description of the robber which is completely different than the petitioner's, and further that he was unable to identify the petitioner from a photo line-up. (Id.:33-34). The petitioner maintains that Officer Robles would have corroborated the second victim's testimony in this regard. He claims their testimony would have supported the petitioner's mistaken identity defense.

The petitioner has provided no affidavits in the state forum, nor in this habeas proceeding, to establish that these witnesses would have testified as proffered nor that they would have been available to testify at trial. Such a bare and conclusory allegation, bereft of record support, is subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962). In fact, defense counsel advised the court that it was having difficulty serving the second victim with a subpoena for trial. In rejecting the claim, the court cited to a colloquy during which the petitioner acknowledged this fact, and conceded that he advised counsel that he did not want to delay going to trial in order to locate the witness. (DE#14:Ex.A:L:15-16). It should also be noted that it is not unreasonable for counsel to strategically determine not to call either witness. To the contrary, calling these witnesses may have hurt, rather than assisted the misidentification defense. Finally, even if these witnesses would have testified as proffered, their testimonies would not alter the outcome of the proceedings, given the evidence adduced at trial, which included the testimony of Calderin, another victim, as well as, the petitioner's codefendant, and his girlfriend. See Fugate v. Head, 261 F.3d 1206, 1239, n.54 (11th Cir. 2001)(fact that other witnesses could have

been called proves only that short-comings of trial counsel can be identified, while shortcomings can be identified, perfection is not the standard of effective assistance).

The trial court in the state forum denied relief on this claim finding in pertinent part that the petitioner had failed to demonstrate deficiency or prejudice arising from counsel's strategic decision to not call these witnesses at trial. That decision was affirmed on appeal without opinion. Brown v. State, 912 So.2d 1234 (Fla. 3 DCA 2003); (DE#14:Ex.A:M).

Under the circumstances present here, no showing has been made in this federal proceeding that counsel was deficient or that the petitioner was prejudiced arising from counsel's failure to call the detective as a defense witness at trial. See Strickland v. Washington, supra. Under these circumstances, the rejection of the claim should not be disturbed here. Williams v. Taylor, supra.

In his remaining claim, **consolidated claim 9-10**, the petitioner asserts that his sentences were vindictive because the petitioner refused to accept the state's plea offer, in violation of his constitutional rights. (DE#9:38). In support thereof, the petitioner maintains that the court was vindictive because the petitioner rejected a plea offer of one and one-half years in prison. The petitioner further relies upon the judge's comments during the motion for new trial proceedings, when it was represented that the petitioner was rejecting a plea to ten years and forfeiture of a direct appeal. At that time, the court cautioned the petitioner that if he did not prevail on the new trial motion, he would face life in prison as a prison releasee reoffender.

The respondent argues correctly that this claim is procedurally

barred from review in this collateral proceeding. The record indicates that this claim was presented in the petitioner's Rule 3.800 motion, but not based on a violation of federal constitutional principles. The trial court found the motion legally insufficient, and denied it without prejudice to the petitioner to its refiling with proper transcripts supporting the petitioner's allegations. (DE#14:Ex.A:N). Rather than refile the motion, the petitioner appealed the trial court's ruling in this regard, which was subsequently *per curiam* affirmed by the appellate court. (DE#14:Ex.A:P).

Moreover, this claim could have been, but was not raised on direct appeal. It is well established in Florida that claims that could have and should have been raised on direct appeal are procedurally barred from collateral review. See Byrd v. State, 597 So.2d 252 (Fla. 1992). Again, the petitioner has failed to demonstrate objective cause for the failure to properly raise the claim in the state courts and actual prejudice resulting from the errors complained of.[11] See United States v. Frady, 456 U.S. at 168; Wainwright v. Sykes, 433 U.S. 72. He also cannot satisfy the fundamental miscarriage of justice exception to the application of the bar. The petitioner is, therefore, not entitled to review on the merits of claim three. House v. Bell, 547 U.S. at 538; Dretke, 541 U.S. at 392-93.

---

[11]If the petitioner were to contend in this federal proceeding that he should be excused from the procedural default because the default was due to appellate counsel's failure to raise the subject claim on direct appeal, such argument would be unavailing. The claim of ineffective assistance of counsel may constitute cause for a procedural default; see Murray v. Carrier, 477 U.S. 478 (1986), except when the ineffective assistance of counsel claim itself has been procedurally defaulted. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In Florida, a claim of ineffective assistance of appellate counsel is presented by way of a state petition for writ of habeas corpus filed in the appropriate state appellate court. State v. Dist. Ct. of Appeal, First Dist., 569 So. 2d. 439 (Fla. 1990). Moreover, he cannot demonstrate that he received ineffective assistance of appellate counsel in that the underlying claim is  meritless so he suffered no prejudice as a result of appellate counsel failing to pursue the claim on direct appeal. See Eagle v. Linahan, 279 F.3d 926, 940 (11 Cir. 2001).

It is noted that even if the claim was not procedurally barred from federal habeas corpus review, the petitioner would not be entitled to relief in this federal habeas corpus proceeding on the claim. It is well-settled law that a defendant may not be subjected to more severe punishment for exercising his constitutional right to stand trial. Wasman v. United States, 468 U.S. 559, 568 (1984). A finding of judicial bias may not be made, however, "unless it affirmatively appears in the record that the court based its sentence on improper information." See Farrow v. United States, 580 F.2d 1339, 1359 (9 Cir. 1978)(en banc).

There is nothing in the record here giving rise to an inference of vindictive sentencing. In fact, the trial court in no way attempted during the new trial and sentencing proceedings to obtain a guilty plea from the petitioner, but was thoroughly and properly advising the petitioner of the possible sentence exposure if he rejected the state's offers. The lengthy sentences imposed was based upon the petitioner's status as a prison releasee reoffender, and not upon the fact that the petitioner rejected the plea offer and elected to maintain his innocence and be tried before a jury, and then pursue a motion for new trial. Review of the transcript of the sentence proceeding reveals that the court heard argument and received evidence to support the enhanced sentence. (R.122-133). Thus, the petitioner has failed to establish judicial bias at sentencing or demonstrate that his lengthy sentence was the product of judicial vindictiveness or otherwise unlawful. He is therefore entitled to no relief on this claim.

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to

relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11 Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 3rd day of March, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Montreal A. Brown, <u>Pro Se</u>
      DC#193252
      Lake Correctional Institution
      19225 U.S. Highway 27
      Clermont, FL 34715-9025

      Jill D. Kramer, Ass't Atty Gen'l
      Department of Legal Affairs
      444 Brickell Avenue
      Suite 650
      Miami, FL 33131